## UNITED STATES v. WALKOWSKY et al.
### No. 5922.

Circuit Court of Appeals, Ninth Circuit.
Feb. 24, 1930.

Anthony Savage, U. S. Atty., and Tom De Wolfe, Asst. U. S. Atty., both of Seattle, Wash., John T. McCutcheon, Asst. U. S. Atty., of Tacoma, Wash., and James T. Rahily, Associate Counsel, of Washington, D. C.

Stuart H. Elliott and H. G. & Dix H. Rowland, all of Tacoma, Wash., for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

It is alleged that the plaintiffs are the children of Kate Walkowsky Weiss, who was a duly enrolled and allotted Indian of the Quinaielt Tribe of Indians; that the father of the children named Walkowsky was a white man named John Walkowsky, now deceased. The father of Edna Weiss, one of the appellees, was a white man named Robert Weiss, who married Kate Walkowsky after the death of her husband John Walkowsky.

Kate Walkowsky Weiss is an Indian woman born in 1874 on Shoalwater Bay on the Coast of Washington. Her mother was an Indian of the Wynooche Band of the Lower Chehalis Indians, and her father was a full-blooded Chinook Indian. Her tribal rights, however, would follow the father, a Chinook Indian, rather than the mother, a Wynooche Indian. The right of Kate Walkowsky Weiss, the mother of the appellees, to an allotment, is not involved in this case, as she has already been allotted lands on the Quinaielt Reservation. Eight of her children have also received allotments. These allotments to Kate Walkowsky Weiss and her eight children were based upon their adoption by the Quinaielt Indian Tribe. Three appellees, Virginia, Allen, and Katherine Walkowsky, were born after the adoption of the mother by the Quinaielt Tribe and have not been adopted, but have been refused adoption by the tribe. The question then is as to their right to allotment upon the theory that their mother became a member of the Quinaielt Tribe by adoption, and that therefore they

.are children of a white man and an Indian woman recognized by the Quinaielt Indian Tribe, as required by 25 USCA § 184. Appellees seem to be of the view that inasmuch as Kate Walkowsky Weiss was an Indian, that she was an Indian by blood and not by adoption, within the meaning of the act in question. It is commented that the words "by blood" and not "by adoption," as used in the act, have reference to the fact that a white person or a negro or a person of some race other than Indian might be adopted by an Indian Tribe, and it is said that these persons would then be Indian by adoption although not such by blood; but where a woman is unquestionably of Indian blood, how, it is asked, can she become an Indian by adoption, when as a matter of fact she is already an Indian by blood? This contention overlooks the fact that we are dealing with the rights to tribal property and that an Indian woman who is not a member of the tribe is no more entitled to allotments on tribal lands than a white man or a negro.

■■ Plaintiffs have no right to an allotment under 25 USCA § 184, as the children of a white man and an Indian woman recognized as a member of the Quinaielt Tribe: First, because she was not recognized as already a member of the tribe, but was adopted into the tribe to make her a member. The children of an Indian woman, a member of a tribe by adoption, are expressly excluded from the allotment authorized by 25 USCA § 184. Second, she was not an "Indian woman" within the meaning of 25 USCA § 184, but, in contradistinction, was herself a child of a white man and an Indian woman authorized as such, by that section, to participate in the tribal lands of her mother's tribe, the Chinooks. She took the status of the father, a white man, and it is only by reason of 25 USCA § 184, supra, that she was entitled to participate in tribal lands of the mother's tribe, the Chinooks. Her right in the Quinaielt tribal lands was based, not upon her Indian blood, but upon an express adoption. She was not a member of the Quinaielt Tribe by blood, but by adoption. The statute authorizing children of the half-blood to participate in the tribal lands of the Indian mother, 25 USCA § 184, supra, applies only to children of an Indian woman by blood, and that means blood of the tribe whose lands are claimed by allotment and not by adoption by that tribe. As was said in Pape v. U. S. (C. C. A.) 19 F.(2d) 219, 220: " * * * That statute, although it conferred a right upon the children of an Indian woman whose condition brought her within the terms of the act, did not bestow such right upon children of marriages contracted after passage of the act, nor upon the children of a mother not recognized as one of the tribe at the time of her marriage or death. We find no authority to sustain the construction that, when an Indian woman married a white man after the act of 1897, and thereafter abandoned her tribal relations and adopted the customs and habits of civilized life, children born to her after such abandonment, who have never been recognized as members of the tribe to which the mother belonged, have the same rights as the mother would have had if she had been affiliated with the tribe at the time of her marriage." See also Oakes v. U. S. (C. C. A.) 172 F. 305. It is true that the mother did not become an Indian by adoption, but she did become a member of the Quinaielt Tribe by adoption, and therefore the right which she thereby secured was not extended to her children, whose status otherwise was determined by her white father and not by that of the mother.

The decree is reversed.